# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | |
|---|---|
| JUAN CARLOS OSCURA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:14-cv-00029 |
| ) | Judge Sharp / Knowles |
| W.B. MELTON, and SHANNON HARVEY, ) | |
| ) | |
|     Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 25. In support of their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 26), a "Statement of Facts in Support" of their Motion (Docket No. 27), and the Declaration of Shannon Harvey with Exhibits (Docket Nos. 28 - 28-11). As ground for their Motion, Defendants argue that there is no genuine dispute as to any material fact and that they are entitled to a judgment as a matter of law because: (1) Plaintiff cannot establish that he suffered the deprivation of any constitutional right; (2) Plaintiff has failed to allege actual injury; and (3) Plaintiff has failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997(e). Docket No. 26.

Plaintiff has not responded to the instant Motion or to Defendants "Statement of Facts in Support," nor has he filed his own statement of undisputed facts.

Plaintiff, an inmate at the Overton County Justice Center ("Jail") at all times relevant to the case at bar, filed this pro se, in forma pauperis action pursuant to 42 U.S.C. §1983, alleging that Defendants violated his First Amendment rights to communicate with his family via mail

written in Spanish and to receive materials written in Spanish. Docket No. 1. Specifically, Plaintiff contends that, on December 11, 2013, he was denied the right to send a letter to his family because it was written in Spanish, and that, on January 3, 2014, he was denied receipt of a book that was sent to him because it was written in Spanish. Docket No. 1. Plaintiff sues Defendants in their individual and official capacities, and seeks unspecified nominal and punitive damages. *Id.*

As noted, Defendants argue that they are entitled to a judgment as a matter of law because: (1) Plaintiff cannot establish that he suffered the deprivation of any constitutional right; (2) Plaintiff has failed to allege actual injury; and (3) Plaintiff has failed to exhaust his administrative remedies, as required by the PLRA. Docket No. 26. Additionally, Defendants state that they were not served in their official capacities and have therefore responded only in their individual capacities, and they argue that they cannot be held individually liable because respondeat superior claims are not cognizable under §1983. *Id.*

For the reasons discussed below, the undersigned finds that there is no genuine dispute as to any material fact and that Defendants are entitled to judgments as a matter of law. Accordingly, the undersigned recommends that the instant Motion for Summary Judgment (Docket No. 25) be GRANTED.

## II. Undisputed Facts[1]

### A. Plaintiff's Verified Complaint

The Statement of Facts in Plaintiff's Verified Complaint states in its entirety as follows:

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

2

> Mail fraud and discrimination. I Juan Carlos Oscura have been denied mail here at the Overton County Jail as well as being denied the right to send mail due to the fact that my family and I communicate in our native language which is Spanish. The staff here at Overton County Jail are not fluent in Spanish nor do they have a translator therefore I am being discriminated against by the Jail and its staff. I feel trapped in an environment where there is a severe language barrier. This is causing me extreme fear and mental anxiety by being incarcerated in a facility that prevents and hinders me from communicating and corresponding with peoples familure [*sic*] with my language. I believe this is unconstitutional and is a violation of my civil rights as a T.D.O.C. inmate and individual. There have been occasions here at Overton County Jail where I have tried sending mail and it has been returned to me by staff. This has been witnessed by . . . inmate and cellmate Cody Wright. There are also occasions where my mail has been refused, there are rejection notices on file. One occasion on 12/11/2013 my mail was rejected due to the fact it was written in a foreign language, an [*sic*] another occasion where a book was sent to me in Spanish but denied because of a foreign language on 1/3/2014.

Docket No. 1, p. 5 (ellipses in original).

Plaintiff's Verified Complaint also states that Plaintiff has written grievances, and that the response to those grievances from the authorities was that he "was told it was their rules, and a security threat." *Id.*, p. 3.

## B. Declaration of Shannon Harvey

At all times relevant to the instant action, Defendant Harvey served as the Jail Administrator for the Overton County Detention Facility ("Jail"). Docket No. 28, Declaration of Shannon Harvey ("Harvey Dec."), ¶ 2.

Plaintiff was arrested on August 15, 2013, on charges of burglary, theft, and vandalism. *Id.*, ¶ 3; Ex. A. At the time of his booking, Plaintiff was presented with the Inmate Mail Procedure and the Grievance Procedure. *Id.*, ¶ 4; Exs. B, C.

3

The Jail keeps an Inmate Mail History for all incoming and outgoing mail for an inmate. *Id.*, ¶ 6; Ex. F. On August 16, 2013, Plaintiff sent a letter to an individual at 411 Douglass Avenue in Murfreesboro, Tennessee. *Id.* On August 27, 2013, Plaintiff received a letter from the address to which he had sent his correspondence. *Id.*, ¶ 7; Ex. F. Plaintiff continued to correspond with the persons located at this address during the months of August, September, October, December, January, March, and April. *Id.*, ¶ 8; Ex. F.

On December 11, 2013, Plaintiff was issued an Inmate Mail Rejection Information slip indicating that personal correspondence from A.S. Oscura had been denied because the letter was written in a foreign language and it contained an incomplete sender name. *Id.*, ¶ 9; Ex. G. On December 14, 2013, Plaintiff filed an Inmate Request Report asking to receive the letter that was rejected because it was written in Spanish. *Id.*; ¶ 10; Ex. H. Defendant Harvey responded that she would look into the matter. *Id.*

On January 3, 2014, Plaintiff was issued a second Inmate Mail Rejection Information slip indicating that a book from Books-A-Million, published in Spanish, was placed in his property. *Id.*, ¶ 11; Ex. I. On January 6, 2014, Plaintiff submitted a Resident Request Report asking to receive the Book that was placed in his property because it was published in Spanish. *Id.*, ¶ 12; Ex. J. Defendant Harvey responded that it was a security issue and she would investigate. *Id.* Upon investigation, Defendant Harvey instructed the officers to give Plaintiff any letters or books that were identifiable by their covers as permissible reading material but happened to be written in Spanish. *Id.*, ¶ 13. She further advised that, in the event there were any questions concerning whether mail or books were acceptable, Jail personnel were to bring the items to her for a determination. *Id.*

The book which was the subject of the January 6, 2014 Request was given to Plaintiff on January 14, 2014. *Id.*, ¶ 14.

Only two items were initially rejected for being written in a foreign language - the letter and the book discussed above. *Id.*, ¶ 16. Both items were provided to Plaintiff once Defendant Harvey investigated the matter. *Id.*

### III.   Analysis

**A.  Local Rules 7.01(b) and 56.01(c) and (g)**

Local Rule 7.01(b) states, in pertinent part:

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court.  Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendants filed the pending Motion on March 5, 2015. Docket No. 25. Plaintiff has failed to respond to the instant Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . .
>
> g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has also failed to respond to Defendants' "Statement of Facts in Support."

5

Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there is no genuine dispute as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

**B.  Summary Judgment Standards**

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond.  *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998).  As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded.  The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ...  The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted).  The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e

A prisoner must exhaust all available administrative remedies before filing a claim under §1983 or any other federal law. 42 U.S.C. §1997e(a). *See also, e.g., White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *Wyatt v. Leonard*, 193 F.3d 876, 878 (6th Cir. 1999). The Prison Litigation Reform Act of 1995 provides in pertinent part as follows:

> (a) **Applicability of Administrative Remedies**. No action shall

> be brought with respect to prison conditions under section 1983
> of this title, or any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis original).

Additionally, the filing of an initial grievance is not sufficient to satisfy the requirements of § 1997e(a). Rather, the PLRA exhaustion of prison administrative remedies requires a prisoner to pursue his prison grievance through the final level of administrative appeal. *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In *Hartsfield*, the Sixth Circuit explicitly stated:

> Even if Plaintiff did file an initial grievance against [defendants],
> he was required to continue to the next step in the grievance
> process . . . . We have previously held that an inmate cannot simply
> . . . abandon the process before the completion and claim that he
> has exhausted his remedies. . .

When a defendant shows that a plaintiff has not "exhausted all available state administrative remedies," the only remaining question is whether Plaintiff's claims have been brought with respect to "prison conditions" as that term is used in 42 U.S.C. § 1997e(a).

The Sixth Circuit discussed the meaning of the term "prison conditions" as used in 42 U.S.C. § 1997e(a) in *Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999). In *Freeman*, Plaintiff inmate brought a lawsuit against prison officials claiming that they had used excessive force against him. The lower court had dismissed his complaint for failure to exhaust administrative remedies. On appeal, Plaintiff argued in part that he was not required to exhaust his administrative remedies because his excessive force claim did not involve a "prison condition" within the meaning of § 1997e(a). The *Freeman* Court stated in part as follows:

> The phrase "action . . . with respect to prison conditions" is not defined in

8

> § 1997e. Because the question is one of statutory construction, we must first look to the plain language of the statute. Defendants argue that the term "prison conditions" as used in 18 U.S.C. § 3626(g)(2), which was amended as part of the same legislation as § 1997e, does include claims such as excessive force because it expressly includes "effects of actions of government officials on the lives of confined persons" as well as "conditions of confinement" in defining "prison conditions." . . . It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places. . . .
>
> Moreover, reading the term "prison conditions" to include claims of excessive force finds support in the purpose and legislative history of the Act. The Act was passed to reduce frivolous prisoner lawsuits and to reduce the intervention of federal courts into the management of the nation's prison systems. A broad exhaustion requirement that includes excessive force claims effectuates this purpose and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

196 F.3d at 643-644 (footnote omitted).

The U. S. Supreme Court has also held that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *See Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 986 (2002). As the *Porter* Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. . . . In other instances, the internal review might "filter out some frivolous claims." . . . And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.
>
> . . .

> For the reasons stated, we hold that the PLRAs exhaustion
> requirement applies to all inmate suits about prison life, whether they
> involve general circumstances or particular episodes, and whether
> they allege excessive force or some other wrong.

122 S.Ct. at 988, 992 (citations omitted, emphasis added).

## D.  42 U.S.C. § 1983

### a.  Generally

Plaintiff alleges violations of his First Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S.

299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

### b. First Amendment: Right to Receive Mail

A prisoner's right to receive mail is protected by the First Amendment, but it is not absolute; prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives. *See, e.g., Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 2261 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974); *Muhammad v. Pitcher*, 34 Fed.3d 1081, 1084-85 (6th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The opening of inmate mail pursuant to a regularly applied regulation, or a random interference based on a reasonable suspicion of a security threat, does not rise to the level of a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600 (1986). *See also, e.g., Wolff v. McDonnell*, 418 U.S. 539, 574-77, 94 S.Ct. 2963, 2983-85 (1974); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993).

### E. The Case at Bar

As discussed above, an inmate's right to receive mail is protected by the First Amendment, but it is not an absolute right; it is subject to reasonable Jail policies and regulations related to security or other legitimate penological objectives. *Turner*, 482 U.S. at 89-90, 107 S.Ct. at 2261; *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804 (1974); *Muhammad*, 34 Fed.3d at 1084-85; *Knop*, 977 F.2d at 1012.

With regard to Plaintiff's First Amendment claim, the following is undisputed:

On December 11, 2013, Plaintiff was issued an Inmate Mail Rejection Information slip indicating that personal correspondence from A.S. Oscura had been denied because the letter was written in a foreign language and it contained an incomplete sender name. Harvey Dec., ¶ 9; Ex.

11

G. On December 14, 2013, Plaintiff filed an Inmate Request Report asking to receive the letter that was rejected because it was written in Spanish. *Id.*; ¶ 10; Ex. H. Defendant Harvey responded that she would look into the matter. *Id.*

On January 3, 2014, Plaintiff was issued a second Inmate Mail Rejection Information slip indicating that a book from Books-A-Million, published in Spanish, was placed in his property. *Id.*, ¶ 11; Ex. I. On January 6, 2014, Plaintiff submitted a Resident Request Report asking to receive the Book that was placed in his property because it was published in Spanish. *Id.*, ¶ 12; Ex. J. Defendant Harvey responded that it was a security issue and she would investigate. *Id.*

The letter and the book written in Spanish were considered a possible security threat and temporarily held pursuant to the Jail rules. Verified Complaint, p. 3; Harvey Dec., ¶ 12; Ex. J. Defendant Harvey investigated the rejections and, upon investigation, instructed the officers to give Plaintiff any letters or books that were identifiable by their covers as permissible reading material but happened to be written in Spanish. *Id.*, ¶ 13. She further advised that, in the event there were any questions concerning whether mail or books were acceptable, Jail personnel were to bring the items to her for a determination. *Id.*

Only two items were initially rejected for being written in a foreign language - the letter and the book discussed above. *Id.*, ¶ 16. Both items were provided to Plaintiff once Defendant Harvey investigated the matter. *Id.*

As can be seen, Plaintiff cannot establish that his constitutional rights were violated. Absent the violation of a constitutional right, Plaintiff cannot sustain his claim.

Moreover, other than naming W.B. Melton as a Defendant, Plaintiff does not make any allegations against Defendant Melton whatsoever. Absent allegations against him, Plaintiff

cannot sustain his claims against Defendant Melton.

With regard to Plaintiff's allegations against Defendant Harvey, the only references to her are that she responded to Plaintiff's grievances, investigated his allegations, and instructed that: (1) Plaintiff's items be returned to him, (2) the officers give Plaintiff any letters or books that were identifiable by their covers as permissible reading material but happened to be written in Spanish, and (3) Jail personnel were to bring any questioned items to her for a determination. Accordingly, it is undisputed that Defendant Harvey promptly responded to, investigated, and rectified Plaintiff's situation; Plaintiff simply cannot demonstrate that Defendant Harvey violated his rights.

### IV.  Conclusion

For the foregoing reasons, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, there is no genuine dispute as to any material fact and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment (Docket No. 25) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge